United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

YUROK TRIBE,
Plaintiff,
v.
CITY OF TRINIDAD, et al.,
Defendants.

Case No. 26-cv-05240-RMI

**ORDER ON MOTION TO DISMISS AND MOTION TO INTERVENE**

Re: Dkt. Nos. 16, 21

Pending before the court are Defendants City of Trinidad, Cheryl Kelly, and Bryce Kelly's Motion to Dismiss, (dkt. 16), and Movant Cher-ae Indian Heights Community of the Trinidad Rancheria's Motion to Intervene, (dkt. 21). Both Motions have been fully briefed and are ripe for adjudication.

**BACKGROUND**

Plaintiff Yurok Tribe filed this Complaint against Defendants City of Trinidad ("City"), Trinidad Mayor Cheryl Kelly, and Trinidad Mayor-Elect Bryce Kenny on June 2, 2026, for declaratory and injunctive relief finding that the City "does not have the legal authority to make legal determinations or findings of fact regarding any Native American tribe's traditional and/or cultural affiliations with the Yurok Village of Tsurai, or a determination regarding Native American lineal or lateral descendants[.]" (Compl. ¶ 6, Dkt. 1.) The Complaint arises out of a series of events involving the site of the Yurok Village of Tsurai—which is located on land owned by the City—and the Tsurai Management Team ("TMT").

The TMT was formed in 2005 as part of a legal settlement related to the City's refusal to allow Yurok tribal members from performing burial rites at the Village of Tsurai ancestral site

United States District Court
Northern District of California

beginning in 1991. (Compl. ¶¶ 30, 32.) The TMT has four members: Plaintiff, the Tsurai Ancestral Society, the City, and the California Coastal Conservancy. (Compl. ¶ 32.) Plaintiff drafted the Tsurai Management Plan ("TMP") in 2007 with guidance from the TMT and financial support from the California Coastal Conservancy; the City adopted the TMP in February 2018 at a Special Called City Council meeting. (Compl. ¶¶ 33–34.) Around the same time, the City adopted General Plan Policy 69 ("the Policy" or "GPP 69"), which addressed Tsurai Village as part of its Local Coastal Program Guide. (Compl. ¶ 35.) In part, the Policy states:

> There shall be no disturbance, vegetative removal or construction, except for a protective fence around the burial ground, on lands designated as Open Space within the Tsurai Study Area without the approval of the lineal descendants of Tsurai, Trinidad Rancheria, City of Trinidad, and the State Historic Preservation Office.

(Compl. ¶ 35.) Plaintiff describes the Policy as "notably failing to mention Plaintiff, disrespecting Yurok cultural and tribal sovereignty." (Compl. ¶ 35.) In October 2018, the City initiated a lawsuit in state court against Plaintiff, the Tsurai Ancestral Society, the Coastal Conservancy, and Trinidad Rancheria—Plaintiff asserted tribal sovereignty and was dismissed from the lawsuit in February 2019. (Compl. ¶¶ 35–37.) The City sued in state court for "a judicial determination of its rights and duties" under the Tsurai Management Plan and the TMT.[1] (Request for Judicial Notice Ex. J, Dkt. 16-1.)

In addition, Plaintiff and the City have had multiple disputes regarding the management of Tsurai Village. In 2025, the City attempted to re-open parts of a trail running through the site without input from Plaintiff, prompting the Tsurai Ancestral Society to appeal the self-issued permit to the California Coastal Commission. (Compl. ¶ 39.) The Commission found substantial issues with the

---

[1] Plaintiff's Complaint does not mention the substance of this lawsuit nor its relationship to the case beyond the eventual agreement reached between the Trinidad Rancheria and the City. However, the state court complaint is included in Defendants' Request for Judicial Notice attached to their Motion to Dismiss. Courts may take judicial notice of outside information and may consider documents incorporated by reference in evaluating motions to dismiss. Courts may judicially notice facts not subject to reasonable dispute that are (1) generally known in the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b). The state court complaint is a public document that is directly relevant to this action, and Plaintiff has not opposed the request for judicial notice. As such, the court takes judicial notice of the state court complaint for its existence and the claims alleged. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) ("[T]he court may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein.").

permit, including the City's failure to consult Native Americans tribes, which required consultation with, "at a minimum, the Tsurai Ancestral Society, Trinidad Rancheria, and the Yurok Tribe—all of whom have known interest in the subject area." (Compl. ¶ 40 (quoting from the findings of the Commission).)

On January 20, 2026, Plaintiff met with Defendants at their request to discuss Plaintiff's position regarding Tsurai Village. (Compl. ¶ 42.) At the meeting, Plaintiff described the history of the Village, its position that GPP 69 omitted Plaintiff to the benefit of Trinidad Rancheria, and its position that it would be illegal for the City to make findings as to the Rancheria's relationship with the Village because such findings would intrude on its own sovereignty. (Compl. ¶ 43.) On May 4, 2026, the City posted a notice of a Special City Council Meeting for the purpose of approving a Partial Settlement Agreement ("PSA") with the Trinidad Rancheria related to the ongoing state court lawsuit. (Compl. ¶ 44.) The PSA included provisions in which the City agreed to unilaterally appoint Trinidad Rancheria to the TMT and to condition its own participation in the TMT on the Rancheria's participation; the City found that Trinidad Rancheria had "asserted and presented credible evidence" that it was "traditionally and culturally affiliated" with Tsurai village; and that because both Plaintiff and Trinidad Rancheria had presented such evidence, and because the City was "not qualified to be the arbiter of cultural affiliation with regard to either tribe," the City would accept the assertions of both tribes with respect to their cultural affiliation to Tsurai Village. (Compl. ¶¶ 44–45.) The following day, Plaintiff sent a Cease-and-Desist letter to Defendants regarding these findings. (Compl. ¶ 49.) Defendants did not respond to the letter, but instead added language to the PSA stating that nothing in said agreement "shall be construed to waive or impair any sovereignty, governmental authority, cultural affiliation, cultural identity, ancestral claim or other legal right" of any tribe, tribal entity, or person, including the Yurok Tribe, and disclaiming any role in determining the relative priority of such claims to the site. (Compl. ¶¶ 50–51.) The Trinidad City Council approved the PSA unanimously at the meeting on May 6, 2026. (Compl. ¶ 53.)

<u>Claims in the Complaint</u>

Plaintiff brings four claims for relief against Defendants. Claim One is a claim for declaratory relief finding that Defendants "have no rights or discretions to make legal determinations

or Findings of Fact regarding the traditional and cultural affiliations of Plaintiff, Plaintiff's villages, or any other Native American tribe." (Compl. ¶ 65.) The claim alleges that "Defendants City and Kelly . . . act[ed] beyond their legal capacity in determining the Trinidad Rancheria has equal traditional and cultural affiliations to Tsurai Village as does Plaintiff" and that "Defendants' invasion of Plaintiff's cultural and tribal sovereignty constitutes irreparable injury to Plaintiff, for the wrongful attribution of traditional and cultural affiliations regarding Tsurai Village to any Native American tribe." (Compl. ¶¶ 63–64.)

Claim Two is titled "Lack of Subject Matter Jurisdiction" and alleges that Defendants' actions were not authorized by the California Constitution Article IX § 5 or Article XI § 7 nor by California Government Code Sections 34000–354000. (Compl. ¶¶ 67–68.) As such, the claim again asks for an order declaring that Defendants had no authority to make any findings regarding the traditional or cultural affiliation of any Native American tribe—however, this claim also requests that such an order "nullify the Findings of Fact and the fruit of the Findings of Fact." (Compl. ¶ 69.)

Claim Three is for failure to provide meaningful consultation under the Historic Preservation Program, 54 U.S.C. § 302706. This claim states that the consultation meeting between Defendants and Plaintiff in January 2026 was not in good faith and was not meaningful consultation as demonstrated by the improper Findings of Fact, "as the improper Findings of Fact are arbitrary, an abuse of discretion, and not otherwise in accordance with the law." (Compl. ¶ 74.) Plaintiff alleges that Defendants requested the consultation solely as a "box checking" exercise to comply with the Coastal Commission's requirements for reopening the trail, and that Defendants were not interested in Plaintiff's position regarding Tsurai Village and "completely ignored Plaintiff's input into a well-documented ancestral village of Plaintiff, and Plaintiff alone." (Compl. ¶¶ 75–76.) Accordingly, Plaintiff requests that the court "invalidate and order the Defendants to withdraw any and all applications where Defendants City, Kelly and/or Kenny represent they have conducted 'meaningful consultation' with Plaintiff." (Compl. ¶ 77.)

Finally, Claim Four is for injunctive relief "to protect [Plaintiff's] cultural sovereignty and tribal sovereignty interests" impeded by Defendants' Findings of Fact. (Compl. ¶ 81.) This claim states that Defendants' actions "exceeded their lawful municipal jurisdiction due to federal

preemption, lack of state-granted authority, and impermissible encroachment on Plaintiff's cultural and tribal sovereignty"; that Plaintiff faces an irreparable injury without an injunction; and that it serves the public interest to grant an injunction because it would support federal policy favoring the protection of tribal self-government and Native American rights. (Compl. ¶¶ 82–86.)

Plaintiff requests the following in the "Prayer for Relief":

> A. Declare that Defendants City of Trinidad and Cheryl Kelly exceeded their legal authority by making the improper Findings of Fact regarding the traditional and cultural affiliation of Native American tribes regarding Tsurai Village and the legal and lateral descendants of Tsurai ancestors;
>
> B. Order that any official actions taken by Defendant City that in any way incorporate, reference, use or relate to the improper Findings of Fact (e.g., the Partial Settlement Agreement, City of Trinidad Resolution Number 2026-04, and Defendants attempted appointment to the Tsurai Management Team, etc.) are null and void and against public policy;
>
> C. Grant a restraining order and/or preliminary and permanent injunctive relief preventing Defendant City of Trinidad from using the improper Findings of Fact presently and in the future for any purpose;
>
> D. Order Defendant City of Trinidad to rescind any official actions, agreements, and resolutions incorporating the improper Findings of Fact;
>
> E. Order Defendant City of Trinidad rescind its Policy 69 regarding Tsurai Village which includes the Trinidad Rancheria and excludes Plaintiff;
>
> F. Order Defendant City to withdraw all applications, appeals, or other legal process where Defendants City, Kelly and/or Kenny represented they have held meaningful consultation with Plaintiff;
>
> G. Order Defendant City of Trinidad to rescind its attempted unilateral appointment to the Tsurai Management Team based on the improper Findings of Fact;
>
> H. Award Plaintiff its reasonable attorneys fees and expenses, costs, and disbursements, including attorneys' fees associated with this litigation; and
>
> I. Grant Plaintiff such further and additional relief as the Court may deem just and proper.

(Compl. at 17–18.)

**LEGAL STANDARD**

Rule 24 of the Federal Rules of Civil Procedure allows nonparties to intervene in litigation if they can show that certain conditions are met. The court must allow intervention where the prospective intervenor has an unconditional federal statutory right to intervene or "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing

of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Ninth Circuit courts apply a four-part test when analyzing motions under Rule 24(a):

> (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). Rule 24(a) is generally construed liberally in favor of potential intervenors in accordance with practical and equitable considerations. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 818.

Persons who do not meet the requirements for intervention of right under Rule 24(a) may instead move for permissive intervention, which the court may grant if the movant has a conditional federal statutory right to intervene or has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Native American tribes may request to intervene in litigation for a limited purpose, including for the purpose of moving to dismiss for failure to join an indispensable party, without waiving their sovereign immunity. *Maverick Gaming LLC v. United States*, 123 F.4th 960, 978 (9th Cir. 2024) ("It is well-established that a tribe's voluntary participation in litigation for a limited purpose does not constitute a blanket waiver of immunity from suit in general."), *cert. denied sub nom. RunItOneTime LLC v. United States*, 146 S. Ct. 98 (2025).

Rule 12(b) of the Federal Rules of Civil Procedure provides multiple grounds on which a party may move to dismiss a complaint. Under Rule 12(b)(1), the court must dismiss claims over which it lacks subject-matter jurisdiction. Facial jurisdictional attacks "assert[] that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," whereas factual jurisdictional attacks "dispute[] the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Under Rule 12(b)(6), the court must dismiss claims that fail to state a claim for which relief

may be granted. Dismissal is required when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" in support of such a theory. *Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). A complaint contains sufficient facts to state a facially plausible claim "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These allegations "may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). When evaluating a motion to dismiss under Rule 12(b)(6), courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Under Rule 12(b)(7), courts may dismiss a claim for failure to join a party under Rule 19. Persons must be joined if (1) the court cannot afford the parties complete relief in their absence; (2) the person has an interest that would be impaired or impeded if the case was resolved in their absence, or (3) the person has an interest that would leave an existing party with a substantial risk of incurring multiple or inconsistent obligations if the case was resolved in their absence. Fed. R. Civ. P. 19(a). If a required party cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). "If it cannot proceed, a motion to dismiss under Rule 12(b)(7) for failure to join a party is properly granted." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019).

**DISCUSSION**

Motion to Intervene under Rule 24(a)

The Cher-ae Heights Indian Community of the Trinidad Rancheria ("Trinidad Rancheria" or "the Rancheria") has moved to intervene in this case for the limited purpose of invoking its tribal sovereign immunity and moving to dismiss under Rule 12(b)(7) for failure to join an indispensable party. It primarily moves to intervene under Rule 24(a), arguing that it has a significant protectable

interest in the subject matter of the litigation that will be severely impaired should the litigation move forward without its involvement. The Rancheria contends that it has significant interests in the PSA, the resolution appointing the Rancheria to the TMT, and GPP 69, all of which the Complaint seeks to nullify or rescind. This nullification or retraction would cause immediate harm because the Rancheria would

> (1) Los[e] the benefit of the PSA, a bargained contract which partially resolved a Trinidad Rancheria cause of action in long-standing litigation between the City and Trinidad Rancheria; (2) los[e] the right to participate as a member of the TMT and to represent the interests of the Trinidad Rancheria and its members regarding the management of City-owned lands located within the ancestral homelands and adjacent to Trinidad Rancheria reservation lands, with and in which Trinidad Rancheria has significant cultural affiliation and interests; (3) impair[] Trinidad Rancheria's ability to pursue the cause of action in its Cross-Complaint that it forewent in exchange for the PSA in the ongoing State Case litigation as well as remaining causes of action in which Policy 69 is an integral part; and (4) negatively affect[] the Trinidad Rancheria's status as a recognized stakeholder under the TMP.

(Mot. Intervene 13, Dkt. 21.) Finally, Trinidad Rancheria argues that Defendants cannot accurately represent its interests because the PSA and other policies were hard-fought wins in its conflict with the City that Defendants do not have the same incentive to protect, and because the requested relief would create a conflict between the Rancheria and Defendants. (Mot. Intervene 15.)

In response, Plaintiff argues that the legal instruments in which the Rancheria claims an interest are only incidental to the primary subject of the litigation: Plaintiff's own sovereignty. Plaintiff contends that the Rancheria has not demonstrated—and, indeed, cannot demonstrate—any legally protectable interest in the sovereignty of another tribe, and that its "purely derivative interest in Defendant's (sic) unlawful municipal encroachment onto Plaintiff's sovereignty [is] insufficient to intervene as a matter of right under Rule 24(a)(2)."[2] (Pl.'s Resp. 12, Dkt. 26.) In addition, Plaintiff

---

[2] Plaintiff also argues that the Rancheria has failed to show that it has met the three elements of Article III standing through the submission of affidavits or other evidence of specific facts and that it has thus failed to establish a right to intervene. (Pl.'s Resp. 10–13.) Plaintiff misstates the law both as to the question of standing and as to the question of proof. The Ninth Circuit Court of Appeals has consistently declined to separately require that prospective intervenors meet the elements of Article III standing, instead requiring only that they meet the requirements of Rule 24(a), except in certain procedural postures that are inapplicable to the current case. *See, e.g.*, *Yniguez v. State of Ariz.*, 939 F.2d 727 (9th Cir. 1991) ("In order for an individual to intervene in ongoing litigation between other parties, he need only meet the *Sagebrush Rebellion* criteria [the four factors in the Ninth Circuit]. However, where no party appeals, the 'case or controversy' requirement of Article III also qualifies an applicant's right to intervene post-judgment."); *In re Volkswagen 'Clean Diesel' Mktg., Sales Pracs., & Prods. Liab. Litig.*, 894 F.3d 1030, 1044 (9th Cir. 2018) ("[A]n

argues that the Hoopa-Yurok Settlement Act ("HYSA") divested the Rancheria of any interest in Plaintiff's sovereignty, resources, property, and rights, and that the Rancheria did not make any argument addressing federal preemption of Defendants' actions. (*Id.* at 13.) Finally, Plaintiff contends that "[s]ince Defendants' and [Trinidad Rancheria's] Motions both fail to address, argue or introduce any admissible evidence establishing a right to encroach on Plaintiff's sovereignty or that Defendants' actions are not preempted by the HYSA, [Trinidad Rancheria's] alleged interest in Plaintiff's sovereignty is adequately represented by Defendants." (*Id.* at 15.)

*1. Protectable Interest in the Litigation*[3]

The fundamental dispute over the Rancheria's Motion to Intervene is the characterization of the subject matter of this litigation in which the Rancheria must establish it has a protectable interest. At a minimum, parties seeking to intervene must show that they have an interest "'protectable under some law' and that there exist[s] 'a relationship between the legally protected interest and the claims at issue.'" *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022) (quoting *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011)). Prospective intervenors may show they have an "interest" under 24(a)(2) when "the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc.*, 630 F.3d at 1173. "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." *City of Emeryville v.*

intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017)). In addition, Plaintiff cites to *Lujan v. Defenders of Wildlife* for the proposition that the Rancheria must support its Motion with affidavits and specific facts demonstrating that it has standing, when *Lujan* stands for the opposite position (never mind that Article III standing is not required at all). 504 U.S. 555, 560–61 (1992) (reiterating that the elements of standing must be supported by the degree of evidence required at each step in litigation; thus, on a motion to dismiss, "general factual allegations . . . may suffice," while on a motion for summary judgment, the plaintiff must go beyond allegations and "'set forth' by affidavit or other evidence 'specific facts'. . ." (quoting Fed. R. Civ. P. 56(e))). As such, the court does not address Plaintiff's arguments involving Article III standing or the lack of affidavits or other evidence submitted along with the Motion to Intervene.

[3] The parties agree that the Rancheria's Motion to Intervene is timely. The Motion was filed only one month after the Complaint, which is well within the reasonable filing time and does not prejudice any party.

*Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995)). Here, the Rancheria does not argue that it has an interest in Plaintiff's sovereignty, but instead that it has protectable interests that would be immediately and directly harmed by the declaratory and injunctive relief that Plaintiff requests. It specifically claims an interest in the PSA, the Resolution, and GPP 69.

"Contract rights are traditionally protectable interests." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001). Trinidad Rancheria has an interest in enforcing the PSA, a contract it negotiated with the City as part of a separate state lawsuit. The PSA obligates the City to pass the Resolution appointing Trinidad Rancheria to the TMT and to condition its own participation in the TMT on the Rancheria's participation. Plaintiff's lawsuit directly seeks the nullification of the PSA and the retraction of the City's attempt to appoint the Rancheria to the TMT. (*E.g.*, Compl. at 17–18.) As such, Trinidad Rancheria has a legally protected interest that would be directly and immediately harmed by Plaintiff's requested relief, satisfying the second and third Rule 24(a) factors. Plaintiff's repeated assertions that the true subject of this case is its own sovereignty does not address the reality that the result of vindicating Plaintiff's sovereignty claims would be the nullification of contracts and policies that directly benefit the Rancheria and that this interest is legally sufficient for intervention as a matter of right.

The Rancheria claims an interest in GPP 69 because it guarantees that the Rancheria will be consulted prior to any physical undertaking by the City on the Tsurai Village property. In particular, the Rancheria argues that GPP 69 affects its position as a recognized stakeholder in the TMP, its ability to approve of projects undertaken pursuant to the TMP or on Tsurai Village generally, and its ongoing lawsuits with the City. (Mot. Intervene 12.) The Rancheria also notes that GPP 69 is one of the factual bases for the decision to appoint it to the TMT. (*Id.*) Plaintiff argues that the Policy infringes on its sovereignty by naming the Rancheria and excluding Plaintiff and contends that the Rancheria has no interest in its claim to protect its own sovereignty. (Pl.'s Resp., Dkt. 26.)

Although there is generally no vested right to benefits which have not yet been awarded pursuant to a challenged regulation or administrative process, applicants for intervention can have a legally protected interest in the continued receipt of benefits already awarded under a challenged

policy. *Compare Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 (9th Cir. 1990) (holding that claim for injunctive relief related to future administrative processes could go forward because the absent parties have the same interest in a lawful administrative process), *with Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) (finding that intervenor had an interest in the continued receipt of benefits as taxpayers and Hawaiians). Moreover, unions are consistently allowed to intervene when challenged ordinances directly benefit their members. *See, e.g.*, *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, No. CV 14-09603-AB (SSX), 2015 WL 12745805, at *3 (C.D. Cal. Mar. 25, 2015) (finding that the union "ha[d] a significantly protectable interest in that its members are beneficiaries of the Wage Ordinance" and collecting cases with similar findings).

GPP 69 directly benefits the Rancheria by establishing that it will be consulted before the City begins certain physical undertakings on the Village site. Plaintiff challenges the substance of the Policy and the inclusion of the Rancheria specifically, rather than challenging the administrative process of the future provision of benefits. The Rancheria has an interest in continuing to receive the benefit of consultation under the Policy, and Plaintiff's claim is not merely a process challenge concerning potential future interests, but instead goes to the legality of the Policy's content, which is the grant of benefits to the Rancheria. As such, the Rancheria has a legally protected interest in GPP 69.

2. *Adequate Representation by Existing Parties*

In general, prospective intervenors need only show that the representation of their interest "may be" inadequate to satisfy this element for intervention. *Arakaki*, 324 F.3d at 1086 (quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)). In the Ninth Circuit, courts

> consider[] three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086. "The 'most important factor' to determine whether a proposed intervenor is adequately represented by a present party to the action is 'how the [intervenor's] interest compares with the interests of existing parties.'" *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950–51 (9th Cir. 2009) (quoting *Arakaki,* 324 F.3d at 1086). "If the proposed intervenor's interest is

'identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation.'" *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1020–21 (9th Cir. 2022) (quoting *Arakaki*, 324 F.3d at 1086).

Trinidad Rancheria argues that even though both it and Defendants are defending the legality of the PSA and the Resolution appointing the Rancheria to the TMT, Defendants cannot adequately represent the Rancheria because they remain adverse parties in the state court lawsuit over the same issue (the Rancheria's right to be appointed to the TMT) and because the relief sought would create a conflict between Defendants and the Rancheria. It points to its counter-complaint in the state case, which details the history of the Rancheria's efforts to be part of the TMT and the City's failure to allow the Rancheria's participation.

Defendants' and Trinidad Rancheria's interests in this case are facially aligned in that they all have the goal of successfully defending the legality of the PSA and the Resolution. However, they have fundamentally different positions that rise above "a mere difference in litigation strategy" and that compromise the ability of existing Defendants to adequately represent the Rancheria's interests. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011). While not stated outright by the Complaint, the backdrop of this litigation is the Rancheria's yearslong attempt to be a participant in the TMT and Plaintiff's equal efforts to oppose its inclusion, with the City in the middle. Defendants primarily have an interest in defending the City's actions and reaching a determination of its responsibilities under the TMT and TMP, but they do not have an interest in the substantive determination of those responsibilities. Although the City wishes to preserve an agreement that allowed the Rancheria's to drop part of its state counter-complaint, the City's initial state lawsuit was for the purpose of clarifying its responsibilities because it was caught between Plaintiff and the Rancheria on the issue of TMT management. The City's main goal is thus to achieve any resolution of this issue such that it is not legally liable to the losing party and does not face contradictory rulings; it does not have an interest in which party loses. Resolving whether the City may take the actions challenged in this case takes a step towards resolving the TMT issue in favor of Plaintiff. While this may be inconvenient to Defendants because it could reopen certain issues in state court, it could be catastrophic for the Rancheria's goal of TMT participation that it

United States District Court
Northern District of California

has pursued for at least the last fifteen years. Defendants are thus not likely to respond to a negative ruling in the same way that the Rancheria would.[4]

In addition to the conflict that could arise between Defendants and the Rancheria based on the outcome of this case, the Rancheria's interests cannot be adequately represented by Defendants because Defendants are precluded from making the arguments that the Rancheria could make in defense of the City's actions here. Specifically, the City cannot assert the Rancheria's own cultural sovereignty and ancestral ties to the Village as justification for the City's findings and actions. Finally, the City and the Rancheria remain adversaries in the state court case out of which the PSA was formed, and the City therefore cannot be expected to zealously advocate for the Rancheria's interests in a case over substantially similar issues. *See Citizens for Balanced Use*, 647 F.3d at 899 (holding that representation would not be adequate where the defendant and intervenor were opposed in different litigation and held different positions on the scope of the issue). The Rancheria's potential arguments about its own entitlement to inclusion on the TMT and its claims to the Village cannot be made by the City, likely would not be made the City given their adverse positions in another lawsuit, and would bring another important aspect into this case that would not be provided by any of the existing parties. Therefore, the Rancheria has satisfied the three-factor test and shown that the Rancheria's interests would not be sufficiently represented. *Arakaki*, 324 F.3d at 1086.

With respect to GPP 69, the Rancheria and Defendants have the identical objective of defending the Policy from Plaintiff's claim of illegality. This gives rise to a presumption of adequacy of representation that must be overcome through a "compelling showing." *Arakaki*, 324 F.3d at 1086. However, the Rancheria has made this compelling showing for the same reasons as explained above. In particular, the Rancheria can argue for its own inclusion on the list based on its own cultural and sovereignty interests in a manner that is unavailable to the City. This is especially consequential as the Rancheria's inclusion in the statute is the substantive element of the Policy that Plaintiff challenges and the reason Plaintiff's requested relief is the rescission of the Policy. The

[4] For example, the City may try to use a ruling against it here to argue for its position in state court against the Rancheria, or it may prefer a settled ruling over the option of appeal.

Rancheria has therefore shown that representation by the City would not be adequate for this claim.

Plaintiff continues to argue that the focus of this case is on its own sovereignty claims, which neither the City nor the Rancheria can lay claim to or challenge, and thus contends the existing Defendants can sufficiently represent the Rancheria in this litigation. As the court explained above, this elides the impact of this case and the fact that Plaintiff's claims target agreements and ordinances that directly benefit the Rancheria and acknowledge its own claim to Tsurai Village. Plaintiff also contends that the emphasis on the state court litigation is improper and that Defendants and the Rancheria should not be allowed to invoke the substance of that lawsuit here to circumvent Plaintiff's successful state-court invocation of sovereign immunity. But Plaintiff is the one who has made that case relevant by specifically challenging the validity of the settlement agreement reached in the state case.

Moreover, while Plaintiff has characterized this case as a limited one dealing only with the question of whether the City encroached on its cultural sovereignty and not the question of the Rancheria's claims to Tsurai Village and the TMT, it is clear from the Complaint and from Plaintiff's opposition that its arguments are broader in scope than it claims. For example, the Complaint describes the Village as "Plaintiff's Tsurai Village[,]" (Compl. ¶ 54), states that Plaintiff was harmed by "the wrongful attribution of traditional and cultural affiliations regarding Tsurai Village to any Native American tribe," (Compl. ¶ 64), claims that Defendants ignored Plaintiff's perspective on "a well-documented ancestral village of Plaintiff, and Plaintiff alone," (Compl. ¶ 76), and directly positions the Rancheria's interests counter to Plaintiff's by describing GPP 69 as "includ[ing] the Trinidad Rancheria to the exclusion of Plaintiff," (Compl. ¶ 35). All of these statements more or less directly state that one element of Plaintiff's sovereignty argument is the City's actions were wrong because Plaintiff has exclusive sovereignty over Tsurai Village, and that the Rancheria necessarily has no claim to it. As another example, the Complaint describes the HYSA as "bar[ring] Rancherias from making any claims to Plaintiff's cultural resources, including ancestral territory." While the Complaint does not go on to clearly state a claim pursuant to the HYSA, Plaintiff makes clear in its brief that it intends to argue that the City's actions were preempted by the HYSA. Because the HYSA says nothing about state or local governments but

instead addresses the claims of Rancherias, this argument puts Trinidad Rancheria's asserted interest in Tsurai Village directly at issue—a finding that the HYSA preempted the City's actions would effectively be a finding that the Rancheria's cultural claims and interest in the Village are void. The City cannot put forth the Rancheria's interest in the Village as described above, so the Rancheria must be allowed to intervene in this litigation.

Having found that Trinidad Rancheria has met the necessary elements of Rule 24(a), it has a right to intervene in this case, and its Motion to Intervene is GRANTED.

Trinidad Rancheria's Motion to Dismiss

Trinidad Rancheria sought intervention in order to file its Motion to Dismiss under Rule 12(b)(7) and Rule 19. The Rancheria contends that it is a necessary and indispensable party under Rule 19 that cannot be joined due to its own sovereign immunity and that this case is due to be dismissed. Defendants have also moved to have the Complaint dismissed for failure to join a required party.

Under Rule 19(a), a person is a "required" party under two circumstances: (1) if the court cannot afford the existing parties complete relief in their absence, or (2) if the person's interest in the subject of the action would be impaired or impeded or would create duplicate or inconsistent obligations for an existing party if the case was disposed in their absence. Fed. R. Civ. P. 19(a)(1). If a required party cannot be joined, the court must decide whether the party is indispensable and the action should be dismissed. Fed. R. Civ. P. 19(b). "A party is indispensable if in 'equity and good conscience,' the court should not allow the action to proceed in its absence." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1161 (9th Cir. 2002) (quoting Fed. R. Civ. P. 19(b)). Courts balance four factors in making this determination: "(1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum." *Kescoli v. Babbitt*, 101 F.3d 1304, 1310–11 (9th Cir. 1996). Courts employ extra caution before dismissing actions with no alternative forum for adjudication. *Dawavendewa*, 276 F.3d at 1162.

First, Trinidad Rancheria has demonstrated that its legally protected interest in the litigation

would be impaired or impeded if the case is resolved in its absence. "To come within the bounds of Rule 19(a)(1)(B)(i), the interest of the absent party must be a legally protected interest and not merely some stake in the outcome of the litigation." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020). This interest must be greater than a financial stake; for example, "an interest that arises from terms in bargained contracts may be protected, but such an interest must be substantial." *Maverick Gaming LLC*, 123 F.4th at 972 (quoting *Dine*, 932 F.3d at 852). Here, Trinidad Rancheria has a legally protected interest in the PSA and the resulting Resolution, agreements that address the Rancheria's own long-standing cultural, sovereignty, and property-related claims, and these interests would be extinguished by the relief sought in this lawsuit. Without the Rancheria's presence, its interests would be impaired or impeded because Defendants cannot adequately represent it as explained above. Trinidad Rancheria is thus a necessary party to this litigation.

Second, Trinidad Rancheria cannot be joined involuntarily because it is a federally recognized Indian Tribe that has not waived its sovereign immunity. *McClendon v. United States*, 885 F.2d 627, 629 (9th Cir. 1989) ("Because they are sovereign entities, Indian tribes are immune from unconsented suit in state or federal court.").

Third, the balance of factors under Rule 19(b) weighs in favor of dismissing most of the claims in the Complaint. While "[t]he balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity," *Jamul Action Comm.*, 974 F.3d at 998, courts in the Ninth Circuit have, "nonetheless, consistently applied the four part balancing test to determine whether Indian tribes are indispensable parties." *Dawavendewa*, 276 F.3d at 1162. Acknowledging the compelling interest of the Rancheria's sovereign immunity, the court considers each of the 19(b) factors in turn.

The question of whether a party's absence would prejudice them or another party "largely duplicates the consideration that made a party necessary under Rule 19(a)." *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002). Here, a decision in this case would prejudice the Rancheria's asserted cultural interests as well as their property interests that are vindicated by the PSA and the Resolution.

The second and third factors require the court to consider whether the lawsuit may be tailored such that the relief requested would be less prejudicial but still an adequate remedy for Plaintiff. Plaintiff asks for a declaration that the City cannot make findings of fact deciding the traditional and cultural affiliation of any tribe to Tsurai village—and by extension, find that the Findings of Fact here were illegal—and nullifying or rescinding any "official actions" that "incorporate" such findings, including the PSA, the Resolution, and the appointment to the TMT. (Compl. at 17.) Plaintiff also asks for injunctive relief preventing the City from using the Findings of Fact now or in the future for any purpose; asks for an order rescinding GPP 69 for its exclusion of Plaintiff; and an order directing the City to withdraw any legal documents or statements which represent that Defendants had held a meaningful consultation with Plaintiff.

Any relief nullifying the PSA and the attendant Resolution and TMT appointment would extinguish the Rancheria's interests; for any relief to have lesser prejudice, it must stop short of nullifying these agreements and their fruit. In theory, a declaration that the City exceeded its legal authority in adopting the Findings of Fact would only be a finding against the City's actions and would not, on its own, impact the Rancheria's interests in the PSA and Resolution. However, the necessary follow-up to such a declaration would be determining the consequences of those illegal findings, with the potential nullification of any policy found to have relied on those findings, which could include the PSA and the Resolution. Without this possibility, such a declaration would not actually redress Plaintiff's alleged injury and would not be an adequate remedy; with this possibility, the Rancheria faces the same prejudice. The same issues apply to an injunction preventing the City from using the findings now or in the future.[5] However, Plaintiff's third claim regarding the consultation with Defendants is unrelated to the Rancheria's interests and can continue forward with no prejudice to it.

The final factor—whether there is an alternate forum in which Plaintiff may seek relief—weighs against dismissal. There is no other place that Plaintiff may sue to vindicate its own

[5] Similarly, the court could not issue a more general declaration that the City cannot make findings of fact about the traditional or cultural affiliations of Native American tribes regarding Tsurai Village without the finding that the City did illegally make those findings, which would lead to the same outcome described above.

sovereignty where the Rancheria may not invoke its own sovereign immunity. However, while courts typically exercise caution when dismissing a case with no alternative remedy, this "is a common consequence of sovereign immunity" that does not generally override dismissal in similar cases. *Dine*, 932 F.3d at 858 (quoting *Hull*, 305 F.3d at 1025). "Accordingly, '[the Ninth Circuit] ha[s] regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs.'" *Id.*

Thus, the first three factors weigh in favor of dismissing the First, Second, and Fourth claims in the Complaint. While the fourth factor weighs against dismissal, it does not override the first three factors, especially because this case involves tribal sovereign immunity. As such, the Trinidad Rancheria is an indispensable party to Claims One, Two, and Four, and in the interest of equity, those claims are DISMISSED.

Defendants' Motion to Dismiss

Defendants move to dismiss the Complaint in its entirety on Rule 12(b)(1), Rule 12(b)(6), and Rule 12(b)(7). The court has already addressed the Rule 12(b)(7) arguments above and found that only the third claim survives Plaintiff's failure to join an indispensable party. As such, the court will address Defendants' arguments for dismissal of the third claim only.

Plaintiff's Claim Three is for "Failure to Provide Meaningful Consultation" pursuant to 54 U.S.C. § 302706. (Compl. 15.) Defendants argue that Plaintiff has failed to state facts sufficient to bring a claim under this statute because the statute applies only to federal agencies, and Defendants are the City and local government officials. (Defs.' Mot. Dismiss 14–15.) In its opposition, Plaintiff contends that the "bad faith" negotiation standard under the Indian Gaming Regulatory Act ("IGRA") should apply here because Defendants' conduct was analogous and that Defendants failed to cite in their Motion any "facts or law permitting a state or municipality to consult a Native American tribe on one topic when intending to use information gathered at consultation to act on (sic) different topic." (Pl.'s Opp. 15–16.) Plaintiff then describes the trail permit the City issued to itself and the fact that Defendants only consulted with Plaintiff after the California Coastal Commission told them to hold the consultation. (*Id.*) Finally, Plaintiff argues that agencies can also fail to meet the good faith standard if they do not "consider rerouting or modifying projects to avoid

severe adverse effects to Traditional Cultural Properties." (*Id.* at 16.)

Plaintiff's Claim Three is brought under 54 U.S.C. § 302706, "Eligibility for inclusion on National Register," which is part of the National Historic Preservation Program Act ("NHPA"). Section 302706(b) reads, "In carrying out its responsibilities under section 306108 of this title, a Federal agency shall consult with any Indian tribe or Native Hawaiian organization that attaches religious and cultural significance to property [under the Act]." In turn, section 306108 requires the head of any Federal agency with jurisdiction over or authority to license any undertaking in any State to "take into account the effect of the undertaking on any historic property" before commencing such an undertaking. 54 U.S.C. § 306108.

On its face, the NHPA only applies to federal agencies and the heads of federal agencies. *See, e.g.*, *Te-Moak Tribe of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 608 F.3d 592, 608 (9th Cir. 2010) (explaining that the NHPA implementing regulations "require *agencies*" to provide tribes with an opportunity to identify their concerns and describe the consultation as recognizing the "government-to-government relationship between the Federal Government and Indian tribes" (second quoting 36 C.F.R. 800.2(c)(2)(ii)(c))); *accord W. Mohegan Tribe & Nation of New York v. New York*, 246 F.3d 230, 232 (2d Cir. 2001) ("[T]he law makes it clear that violations of the NHPA can only be committed by a federal agency."); *Norton v. Beasley*, No. 21-6053, 2022 WL 17348385, at *7 (6th Cir. Dec. 1, 2022) ("[The] directive [of section 306108] plainly limits the conduct only of federal agencies." (citing *Kaufmann v. Fed. Aviation Admin.*, 722 F. App'x 438, 442 (6th Cir. 2018) ("NEPA, the NHPA, and the Transportation Act generally apply only to federal agencies.")); *cf. San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1097–98 (9th Cir. 2005) (concluding that "[a]ny claim for violation of [consultation] obligations under NHPA is against the federal government, not a third party" and that NHPA claims must be brought pursuant to the Administrative Procedures Act). Plaintiff agrees that Defendants are not federal agencies or the heads of federal agencies and cites no authority for the proposition that the NHPA should apply to local governments or local officials.

Moreover, Plaintiff's argument that the bad faith standard for negotiating under the IGRA should apply because there are "parallels in conduct" is unavailing. It is not Defendants' burden to



United States District Court
Northern District of California

show that the consultation and its result were specifically allowed, but rather Plaintiff's burden to show that Defendants' conduct was proscribed. Plaintiff cites no authority for extending the IGRA or the NHPA beyond their statutorily-defined actions and no other authority for its bad faith consultation cause of action. Finally, even if it was appropriate to draw import the statutory definitions of the IGRA into this context, Plaintiff has not stated enough facts to show that Defendants engaged in bad faith negotiations. Plaintiff's Complaint primarily alleges that the bad faith is evident because Defendants did not accept Plaintiff's contentions about the history of the Village as true or exclusive of the request of the Rancheria, but this does not establish bad faith so much as a difference of opinion. It is also not clear why Plaintiff invokes the City's failure to consult with it as part of the 2025 trail reopening in this claim, as it does not appear that Plaintiff or Defendants called the meeting to talk about the trail or discussed the trail project during the meeting. There is no indication from the Complaint that Plaintiff could properly state a claim based on these allegations. As such, Claim Three is DISMISSED for failure to state a claim.

## CONCLUSION

Trinidad Rancheria's Motion to Intervene is GRANTED, and its Motion to Dismiss for Failure to Join an Indispensable Party is GRANTED IN PART and DENIED IN PART, and Plaintiff's Claims One, Two, and Four are DISMISSED. Defendants' Motion to Dismiss is GRANTED IN PART, and Plaintiff's Claim Three is DISMISSED. Accordingly, the case is dismissed with prejudice.

A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: September 8, 2026

ROBERT M. ILLMAN
United States Magistrate Judge